IN THE UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MURPHY OIL USA, INC.                                                            PLAINTIFF


VS.                                      CASE NO. 07-CV-1071


SR INTERNATIONAL BUSINESS INSURANCE
COMPANY LTD., ARCH REINSURANCE LIMITED,
ZURICH INSURANCE COMPANY, and
GERLING-KONZERN ALLGEMEINE
VERISICHERUNGS-AG                                                          DEFENDANTS

**<u>MEMORANDUM OPINION</u>**

Before the Court is a Motion for Preliminary Injunction filed by Plaintiff Murphy Oil

USA, Inc. ("Murphy").  (Doc. 13).  Separate Defendant SR International Business Insurance

Company, Ltd. ("SRI") has responded.  (Doc. 23).  The Court finds the matter ripe for

consideration.

On August 27, 2007, the Court issued a Temporary Restraining Order that barred

Defendants from seeking from an English court any injunction or other order that would prevent

or hinder Murphy from prosecuting the above-captioned action before this Court.  (Doc. 6).  On

September 6, 2007, the Court extended the Temporary Restraining Order for ten days, and the

order is now set to expire on September 20, 2007.  (Doc. 14).  Murphy moves this Court to enter

a preliminary injunction to enjoin the Defendants from petitioning a court in England, or any

other tribunal, for an order preventing Murphy from proceeding with the above-captioned action

before this Court.  The Court, having had the benefit of oral arguments[1] and having considered

the briefs, denies the Motion for Preliminary Injunction for the reasons stated below.

## **BACKGROUND**

On August 17, 2007, Murphy filed its complaint against the Defendants, Murphy's excess

insurance carriers, seeking insurance coverage for existing and expected losses suffered by

Murphy in connection with litigation arising out of damage caused by Hurricane Katrina.  The

hurricane caused an oil spill at Murphy's Meraux, Louisiana refinery.  A class action lawsuit was

filed against Murphy by residents who claimed damages from the oil spill.  In September 2006, a

settlement agreement was finalized in the class action lawsuit in which Murphy agreed to pay

$330 million.  Murphy asserts that this settlement triggered the Defendants' obligation to provide

coverage pursuant to the express terms of its insurance policies.

On August 14, 2007, the Defendants served written notice of their intent to arbitrate their

coverage dispute with Murphy in London, England, pursuant to an arbitration clause in each of

the Defendants' standard form policies.[2]  The Defendants conveyed to Murphy that they were

amendable to staying the arbitration proceedings in favor of further negotiation, provided that

Murphy confirm in writing the following:  (1)  that Murphy accepts the policies' exclusive

dispute resolution mechanism, which is found in the arbitration provision; (2)  that Murphy will

not contest the exclusive jurisdiction of the arbitral process; and (3) that Murphy take no action

---

[1]On September 17, 2007, a hearing was held on Murphy's Motion for a Preliminary Injunction.  Murphy and SRI were the only parties present at the hearing.

[2]The arbitration clause states that any dispute, controversy or claim arising out of or relating to the policies or the breach of the policies shall be finally and fully determined in England under the provisions of the Arbitration Acts of 1950, 1975, and 1979.

to undermine the arbitration process.  Murphy responded by filing its complaint in this Court, claiming that Defendants have wrongfully denied Murphy's request for reimbursement of amounts owed under these insurance policies with Defendants.[3]  Murphy now seeks a preliminary injunction to enjoin the Defendants from petitioning a court in England, or any other tribunal, to prevent Murphy from proceeding with the above-captioned action before this Court.

### III.  DISCUSSION

The grant or denial of a preliminary injunction "involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties ...;(3) the probability that movant will succeed on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  Murphy claims that all four of these factors weigh in its favor, while Separate Defendant SR International Business Insurance Company, Ltd. ("SRI") argues just the opposite—that none of these factors weigh in favor of Murphy.[4]

First, the Court considers the threat of irreparable harm to Murphy.  Murphy argues that if the Defendants obtain an anti-suit injunction from a foreign tribunal, Murphy will be without an adequate remedy at law; specifically, Murphy claims that it will be without a forum for it to assert the protection of an Arkansas law that renders the arbitration clause relied on by

---

[3]SRI asserts that it did not disclaim coverage or deny Murphy's claim.  Instead, SRI states that it responded to Murphy's claim for indemnity by notifying Murphy that the amounts incurred to date did not appear to exceed the attachment point of the SRI policy, which is $317 million. SRI further states that it responded to Murphy's indemnity claim by requesting information and by reserving its rights under the policy and governing law.

[4]SRI is the only Defendant who filed a response to Murphy's Motion for Preliminary Injunction and attended the hearing on this issue.

Defendants unenforceable.  However, SRI disputes the applicability of Arkansas law to this contract.

The insurance policies contain a provision selecting New York law to govern disputes arising out of the policies.  Arkansas courts will enforce contractual choice-of-law provisions so long as the law selected is reasonably related to the contract at issue and does not violate a public policy of the forum state.  *See Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.,* 926 F.Supp. 853, 841 (E.D. Ark. 1996).  Murphy asserts that New York law is not reasonably related to the insurance policies.  Murphy further asserts that New York law upholds arbitration clauses, which violates Arkansas public policy.  Arkansas law prohibits the enforcement of arbitration clauses in insurance policies.  *See* Ark. Code Ann. § 16-108-201(b).  Thus, Murphy argues that the arbitration clause in its insurance policies with Defendants is ineffective and not binding on Murphy.

SRI argues that Arkansas law has no bearing on this case, because the New York Convention applies here.  The New York Convention refers to a treaty entered into by the United States directing district courts to recognize and enforce arbitration agreements between international merchants if the agreements meet certain criteria.  *See* Convention on the Recognition and Enforcement of Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38; 9 U.S.C. § 201–208 (implementing the New York Convention).  Generally, under the Supremacy Clause, treaties trump any Arkansas law that otherwise might be applicable to this case.  U.S. Const. art. VI, cl. 2.

Responding to this argument, Murphy maintains that the arbitration clause is unenforceable because Arkansas Code Annotated § 16-108-201(b), as applied through the

McCarran-Ferguson Act, renders the arbitration clause in the insurance policies void.  In other words, Murphy asserts that Arkansas law reverse preempts the New York Convention.  Under the McCarran-Ferguson Act, 15 U.S.C. § 1101 *et seq.*, state laws that regulate the business of insurance generally take precedence over federal laws that are not specifically applicable to the business of insurance but have the effect of impairing state insurance laws.  McCarran-Ferguson essentially leaves the regulation of the business of insurance to the states and preserves state statutes regulating insurance from preemption.  *See* 15 U.S.C. § 1101 *et seq.*

SRI argues that, despite Arkansas's prohibition on arbitration agreements in insurance contracts, the arbitration clause in the parties' agreement is nevertheless enforceable because it involves international, and not domestic, commerce.  Murphy disagrees, and cites *Stephens v. American Int'l Ins. Co.*, 66 F.3d 41 (2d Cir. 1995), for the proposition that the New York Convention does not supersede state law because of the operation of the McCarran-Ferguson Act.[5]  The Court, however, does not find the *Stephens* case as persuasive as Murphy advocates it to be.

The *Stephens* case from the Second Circuit held that the McCarran-Ferguson Act, although passed prior to the implementation of the New York Convention in 1970, nevertheless superceded the New York Convention insofar as it applied to preserve state-law defenses to arbitration clauses contained in insurance contracts.  *Stephens*, 66 F.3d at 45.  Reasoning that the

---

[5]Murphy also cites an unpublished district court case within the Eighth Circuit, *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 1996 WL 938126 (W.D. Mo. June 10, 1996), which held that a Missouri anti-arbitration statute reverse preempted both the FAA and the New York Convention by operation of the McCarran-Ferguson Act.  A review of Eighth Circuit caselaw reveals that the Eighth Circuit has not yet decided whether a state anti-arbitration statute reverse preempts the New York Convention by operation of the McCarran-Ferguson Act.

Convention was not self-executing, the court held that it was "simply inapplicable" to cases in which the McCarran-Ferguson Act applied. *Id*. However, the Second Circuit has since recognized some tension between its reasoning in *Stephens* and the legislative history of the McCarran-Ferguson Act. *See Stephens v. Nat'l Distillers and Chem. Corp.,* 69 F.3d 1226, 1231 n. 5 (2d Cir. 1995) (declining to address whether McCarran-Ferguson Act is limited to interstate and not foreign commerce, but noting that "there is some indication in the legislative history of the McCarran-Ferguson Act that it was intended to apply only to [Interstate] Commerce Clause legislation"). The Court notes that while the *Stephens* case does support Murphy's position, the case is not controlling and its reasoning is doubtful. Also, as discussed below, other circuits have declined to follow *Stephens*.

The Court finds more persuasive the Fifth and Eleventh Circuits' statement that the New York Convention "must be enforced according to its terms over all prior inconsistent rules of law." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*. 141 F.3d 1434, 1440 (11th Cir. 1998); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1145 (5th Cir. 1985). This view is more in line with the New York Convention's intended purpose and the Eighth Circuit's strong language recognizing that "international comity is a fundamental principle deserving of substantial deference." *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 360 (8th Cir. 2007).

The New York Convention, as incorporated into federal law, is intended "to encourage the recognition and enforcement in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 & n. 15, 94 S.Ct. 2449, 2457 (1974). It

"provide[s] businesses with a widely used system through which to obtain domestic enforcement of international commercial arbitration awards resolving contract and other transactional disputes, subject only to the minimal standards of domestic judicial review for basic fairness and consistency with national public policy." *Indus. Risk Insurers*, 141 F.3d at 1441. The refusal by courts of one country to enforce an international arbitration agreement most certainly frustrates the purposes of the New York Convention.

Comity has been defined by commentators using terms such as "courtesy, politeness, convenience or goodwill between sovereigns, a moral necessity, expediency, reciprocity or consideration of high international politics concerned with maintaining amicable and workable relationships between nations." *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1519 n. 10 (11th Cir. 1994). To allow parties to international agreements to rely on state-law defenses to render arbitration clauses unenforceable would damage the fabric of international commerce and trade and would diminish the willingness of foreign businesses and individuals to enter into international commercial agreements. *See Scherk,*, 417 U.S. 516–17, 94 S.Ct. 2449. The Supreme Court has given much deference to the principles of international comity in its treatment of international agreements to arbitrate as distinct from domestic agreements. *See Mitsubishi Motors Crop. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346 (1985); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S.Ct. 2322 (1995); *Sherck,* 417 U.S. 50.

In sum, multiple principles convince this Court that the New York Convention supersedes the McCarran-Ferguson Act. First, at least two circuits have held that the New York Convention prevails over previously enacted inconsistent rules of law. Second, the Second Circuit has

indicated that the legislative history of the McCarran-Ferguson Act indicates that it is limited to domestic, not foreign, commerce.  Third, the Eighth Circuit strongly states that international comity is a fundamental principle deserving substantial deference. Finally, the United States Supreme Court has, on at least three occasions, treated international agreements to arbitrate as distinct from domestic agreements, citing principles of international comity.

      Having established that the New York Convention supercedes the McCarran-Ferguson Act, the Court now turns to the question of whether the New York Convention applies to this case.[6]  We find that it does.  In determining whether the New York Convention applies, courts consider four factors:  (1) whether a written arbitration agreement between the parties exists; (2) whether the arbitration agreement provides for arbitration in the territory of a signatory of the New York Convention; (3) whether the relationship between the parties involves a commercial subject matter; and (4) whether the relationship between the parties is something other than entirely domestic.  *See* 9 U.S.C. § 202; *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Enrol Int'l C.V.,* 198 F.3d 88, 92 (2d Cir. 1999).  Here, there is a written arbitration agreement between Murphy and the Defendants that provides for arbitration in England, a signatory of the New York Convention.  The insurance policies arose out of and involve a commercial relationship between the parties, and the relationship is not entirely domestic.  The Defendants are companies located in foreign countries, the policies were negotiated and prepared in Switzerland, and the policies were delivered to Murphy's insurance broker in London, England.  Thus, the New York

---

[6]It should be noted that even if the New York Convention did not apply here, the sophisticated international parties specifically agreed that New York law, with its strong policy of enforcing arbitration agreements, would apply.

Convention, which directs the Court to enforce arbitration agreements between international merchants, applies to the parties' dispute in this case.

Looking again at the first *Dataphase* factor, which is the irreparable harm to Murphy, Murphy cannot show that it will be without an adequate remedy at law to decide its claims against the Defendants. Murphy claims that if the Defendants obtained an anti-suit injunction, it would be without a forum to assert the protection of the Arkansas law that renders the arbitration clause unenforceable. However, Arkansas law does not apply here, so Murphy's ability to assert the protection of an Arkansas law is not relevant. Denial of the Motion for Preliminary Injunction does not leave Murphy without an adequate forum in which to litigate its claims against Defendants. Murphy will be allowed to pursue its claims through arbitration in England. Murphy does not assert that it would suffer any other irreparable harm if the Court does not issue the preliminary injunction. The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987).

Turning now to the second *Dataphase* factor, the Court examines the state of the balance between the irreparable harm to the movant and the injury that granting the injunction will inflict on other parties. If the arbitration clause is enforced, Murphy will have to participate in an arbitration where each of the parties chooses one arbitrator and the two arbitrators then choose a neutral chairman. If Murphy is allowed to proceed with its action here, multiple foreign companies will be forced to litigate the same issues in the United States and England. The potential injury to the Defendants caused by forcing them to litigate the same issues in more than

one forum, outweighs the potential harm to Murphy, especially given the Court's finding that Murphy will suffer little or no irreparable harm if it was forced arbitrate its claims.

The third *Dataphase* factor considers Murphy's likelihood of success on the merits. As discussed earlier, the New York Convention applies to international arbitrations, such as this one, even where state laws purport to forbid arbitration. Thus, even if Murphy was likely to succeed on its contract claims, Murphy is unable to show that it will likely be able to go forward with its claims in this Court, given that the excessive insurance policies state that arbitration will be the exclusive means of litigating disputes arising therefrom.

The Court now examines the final *Dataphase* factor, which is the public interest. Murphy claims that it is in the public interest to allow it the opportunity to further the public policy expressed in Arkansas law. However, as discussed earlier, Arkansas law does not apply here. What Murphy is asking for is closely analogous to a request for an anti-suit injunction. In cases involving a request for an anti-suit injunction, the Eighth Circuit considers the recognition of international comity as a fundamental principle deserving substantial deference. *Goss* 491 F.3d at 360. "[W]orld economic interdependence has highlighted the importance of comity, as international commerce depends to a large extent on the ability of merchants to predict the likely consequences of their conduct in overseas markets." *Id*. (citing *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 18 (1st Cir. 2004)). As discussed earlier in this opinion, the interests of the United States and the public interests here include principles of international comity. In balancing the interests here, we find that any private interest that Murphy has in litigating its claims in an Arkansas forum applying Arkansas law is outweighed by the interests of the United States and the principles of international comity.

-10-

## <u>CONCLUSION</u>

For the reasons stated above, the Court refuses to enter a preliminary injunction against

the Defendants.  Thus, Murphy's Motion for Preliminary Injunction is **DENIED**.

**IT IS SO ORDERED**, THIS 20th day of September, 2007.


                                                      /s/ Harry F. Barnes

                                          Hon. Harry F. Barnes

                                          United States District Judge